**THE WILLIAM J. CONWAY. THE GENEVA. CLEARY BROS. v. STANWOOD TOWING CO. et al.**

(District Court, S. D. New York. November 20, 1922.)

**Collision** ⊙95(7)—Tugs both held in fault.

A collision in Morris Canal Basin in the daytime between a scow in tow and the tug Geneva, taking her tow from a pier and not yet on her course, *held* due to faults of both tugs; the Geneva being in fault for not seasonably stopping and reversing, as required by article 29 of the Inland Rules (Comp. St. § 7903), under the Special Circumstances, and both for failing to keep proper lookout.

⊙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Admiralty. Suit for collision by Cleary Bros. against the Stanwood Towing Company and Walker D. Hines, Director General of Railroads. Decree for half damages.

Macklin, Brown, Purdy & Van Wyck, of New York City (Horace L. Cheyney, of New York City, of counsel), for Stanwood Towing Co.

Thomas C. Byrne, of New York City, for libelant.

Charles M. Sheafe, Jr., of New York City (Irving Miller, of New York City, of counsel), for Director General.

WARD, Circuit Judge. June 18, 1919, about noon, a collision occurred in the Morris Canal Basin between the starboard side of the scow Ellenville, in tow of the tug William J. Conway, and the stern of the tug Geneva. The Conway took the scow from the north side of the Basin on a bridle hawser some 20 feet long, bound to Canal street, North River, and started with her engines hooked up under a jingle bell full speed ahead.

The tug Geneva was preparing to back from the end of Pier B on the south side of the Basin, with a head line to a pump boat. When about 200 feet away the Conway blew a signal of two blasts, which the Geneva answered with two, but notwithstanding this agreement the collision took place, in broad daylight, in unobstructed water 475 feet in width.

The answer of the claimant of the Conway alleged that she took the scow in tow at Rodemond's dry dock on a course near the north side of the Basin and blew a signal of two blasts to the Geneva, which she repeated, saying nothing about any answer. But at the trial her master said that he took the scow in tow when she was lying inside another boat, which was fast to piles at each end, and started straight out of the Basin parallel with the north side, and that he blew one signal of two blasts, which were answered by two blasts by the Geneva. These discrepancies shake my confidence in the Conway's case.

I am quite satisfied that the Ellenville was lying, not parallel with the Basin, but north and south between two dry docks which projected into the Basin, and that it would have been impossible for the Conway to take her straight out. She would have had to starboard and swing around to the southward. I also find the collision took place about the middle of the Basin, and that the Geneva, with her tow, including herself, some 125 feet long, did not stop and reverse seasonably. She had not got upon a steady course, and the case was one of special circumstances, within article 29 of the Inland Regulations (Comp. St. § 7903).

The deckhand of the Conway was on her stern tending to the lines, and the mate of the Geneva was at her bow, tending to the head line to the pump boat. Whatever lookout there was on the tugs, respectively, was kept by the officers who were steering. I think both were at fault, and there will be the usual decree for the libelant of divided damages.